IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt)

| | | |
|---|---|---|
| **SPORT SQUAD, INC.** | * | |
| | * | |
| Plaintiff, | * | No. 8:24-cv-01712-PX |
| | * | |
| v. | * | |
| | * | |
| **USA PICKLEBALL ASSOCIATION** | * | |
| Defendant. | | |

## MEMORANDUM ORDER

Pending is Plaintiff Counter-Defendant Sport Squad, Inc. d/b/a/ Joola ("Joola")'s Motion to Dismiss the counterclaim pending against it. ECF No. 43. The matter is fully briefed, and the Court does not need a hearing. *See* D. Md. Loc. R. 105.6. For the following reasons, the motion is DENIED.

Joola initiated suit against Defendant Counter-Plaintiff, USA Pickleball Association ("USAP"), arising from a dispute related to USAP's authorization for Joola to use the "USAP" seal of approval on a line of pickleball paddles that Joola has manufactured for sale. ECF No. 54. USAP answered the operative Amended Complaint, ECF No. 55, and had previously filed its counterclaim against Joola. ECF No. 38. The counterclaim essentially asserts that Joola has engaged in a "bait-and-switch" during the USAP review and approval process of Joola's pickleball paddles, submitting one paddle design for USAP's review and approval, but then offering for sale a different more powerful paddle that had not been reviewed and approved. *Id.* From this, USAP brings three counterclaims against Joola: Fraudulent Misrepresentation and Concealment (Count I); False Endorsement in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) (Count II); and

Declaratory Judgment (Count III). Each count, says Joola, is insufficiently pled and must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

I.  **Background**

USAP is the standard-bearer for the wildly popular game of pickleball. ECF No. 38 ¶¶ 2, 28. USAP sets the rules of play and manufacture specifications for pickleball courts and equipment in recreational and competitive spaces. *Id.* ¶¶ 3, 6, 27. Pickleball equipment manufacturers pay USAP to test and approve their equipment as compliant with USAP rules and standards. *Id.* ¶¶ 7, 35, 70. If compliant, USAP will authorize the manufacturer to sell the equipment with an affixed "USAP Pickleball Approved" logo. *Id.* ¶¶ 6, 7, 32. The review and approval process requires a measure of trust between USAP and the manufacturer submitting the equipment for review. *Id.* ¶ 8. Because USAP cannot test every piece of equipment ultimately sold, USAP directs the applicant-manufacturer to submit a prototype for testing and review, and then agree to manufacture only equipment identical to the prototype. *Id.* ¶ 31.

Joola submitted to USAP for review a pickleball paddle prototype that "passed" USAP's detailed design and manufacture specifications and received authorization for sale with the USAP seal of approval. *Id.* ¶¶ 10, 35, 36. Joola instead manufactured and sold at a premium a "juiced" version of the prototype paddle—one that was more powerful and distinctly different than that approved by USAP. *Id.* ¶¶ 17, 36–42.

USAP learned of the "bait-and-switch" after "rumblings" in the pickleball community prompted USAP to compare the paddles Joola was offering for sale with the prototype submitted for approval. *Id.* ¶¶ 8, 12, 16. That comparison revealed a wide array of differences between the prototype and the for-sale paddles. *Id.* ¶¶ 12–15. When USAP brought the discrepancies to Joola's attention, Joola claimed the switch was accidental. *Id.* ¶ 18. Although USAP insisted that Joola

cease selling the juiced paddles, the paddles are still on the market.  *Id.* ¶¶ 49, 50.  The "bait-and-switch" scheme, says USAP, "created a substantial scandal within the pickleball community," and left in the "false impression that USAP had approved [the non-compliant paddles], causing damage to USAP's reputation and business dealings."  *Id.* ¶ 50.

II.     **Standard of Review**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  The Court accepts "the well-pled allegations of the complaint as true," construing all facts and reasonable inferences most favorably to the plaintiff, *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997), but the counterclaim's factual allegations "must be enough to raise a right to relief above the speculative level[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

With this standard in mind, the Court construes the counterclaim facts as true and most favorably to USAP as the nonmovant and considers the sufficiency of each count separately.

III.    **Analysis**

As to Count I, fraudulent misrepresentation and concealment, Joola solely contends that the claim fails to plead damages with sufficient specificity.  ECF No. 43 at 5–6.  The Court disagrees.  When reading the counterclaim most favorably to USAP, Joola's bait-and-switch has placed into the market for sale falsely branded "USA Pickleball Approved" paddles.  And that the falsity of this claim, combined with the current paddles in circulation, has resulted in "damage to USAP's reputation and business dealings."  ECF No. 38 ¶ 50.  USAP also avers "lost business relationships," and that the "negative image" arising from the suggested complicity of USAP in the "endeavor to deceive the public," all resulted in "lost revenue."  *Id.* ¶ 57.  Given that USAP derives its revenue from issuing standards and then enforcing the same in the pickleball

community, a breach of this kind plausibly would result in diminished business opportunity precisely because the sanctity of the USAP logo has been tarnished by the "scandal" involving Joola's juiced paddles.  *Id.* ¶ 50.  Because USAP has sufficiently articulated the element of damages, dismissal is denied as to Count I.

Next, Count II alleges a violation of Section 43(a)(1)(A) of the Lanham Act for Joola's false association of the USAP seal of approval on non-approved paddles for sale.  ECF No. 38 at 19.  Joola similarly contends that USAP has failed to make plausible any damages that were proximately caused by the alleged violations.  ECF No. 43 at 8.  Section 43(a)(1)(A) prohibits "[a]ny person who, on or in connection with any goods or services, or any container for goods," from using "in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A).  Further, the provision allows for recovery as to "any person who believes that he or she is or is likely to be damaged by such act."  *Id.*

Pursuant to *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 (2014), a false association claim under this provision must make plausible that the claimant (1) possesses a protectable interest under the Act, and (2) that the losses incurred were "proximately caused by violations of the statute."  *Id.* at 129–32.  Legally cognizable damage under the Act includes reputational harm.  *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 711–12 (4th Cir. 2016) (citing *Lexmark*, 572 U.S. at 133).

4

When viewing the counterclaim most favorably to USAP, damages proximately caused by Joola's unauthorized use of the "USAP Pickleball Approved" seal is plausible. Joola's false association of the USAP-approved label with the "juiced" paddles caused a "pickleball scandal," and the paddles are still on the market. *Id.* ¶¶ 49, 50, 61, 63, 64. Given that USAP depends on its reputation as the standard-bearer for the sport, Joola's continued false association of the USAP logo on paddles that fall well outside the USAP standards could have plausibly caused reputational harm. ECF No. 38 ¶ 6. It is thus reasonable that Joola's deceptive bait-and-switch, which falsely associates USAP with the "juiced paddles," diminished the value of the USAP-approved seal in the eyes of USAP customers. *See Belmora LLC*, 819 F.3d at 715 (holding as sufficient for damages "economic or reputational injury flowing directly from the deception wrought by the defendant's [conduct].") (quoting *Lexmark*, 572 U.S. at 133) (alteration in original). *See also Lexmark*, 572 U.S. at 133 ("a plaintiff can be directly injured by a misrepresentation even where 'a third party, and not the plaintiff, . . . relied on' it.") (quoting *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 656 (2008)). This is sufficient to survive dismissal. *Belmora LLC*, 819 F.3d at 713.[1] The motion to dismiss Count II is thus denied.

Last, as to Count III, USAP seeks a specific declaration that "Joola misrepresented and/or labeled one or more paddles as approved by USAP without having been submitted for testing." ECF No. 38 ¶ 72. USAP further requests declaratory relief because such a finding would trigger the "probationary period" for Joola under its contract with USAP. *Id.* ¶ 71 (provision of agreement stating "If USA Pickleball discovers that a paddle or ball has been misrepresented and/or labeled

---

[1] Similarly, the counterclaim makes plausible that members of the pickleball community "withheld trade" because of Joola's alleged false assertion that its "juiced" paddles were USAP-approved. As the standard-bearer, USAP derives its revenue from manufacturers submitting their products for review. But the diminished value of the USAP seal of approval resulting from the "scandal" plausibly would undermine confidence in USAP and, by extension, result in "lost revenue" as manufacturers refrain from seeking USAP review of their equipment. ECF No. 38 ¶ 57.

as approved by USA Pickleball without having been submitted for testing or has failed testing: The offending manufacturer will be placed on probation for one year. During the probationary period, the manufacturer's products (includes: all paddles and balls) may not be submitted for testing.").

Joola contends that because the requested relief "substantially overlaps" with Counts I and II, Count III should be dismissed. ECF No. 43 at 11–12. The Federal Declaratory Judgment Act allows courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Importantly, "[t]his power has consistently been considered discretionary." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996). A request for declaratory judgment may proceed when the declaration "will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id*. The requested declaration in Count III will clarify and settle USAP's contractual entitlement to place Joola on probation. Thus, the claim is proper.

USAP also correctly highlights that the "probationary period" in the agreement can be triggered by the mere "failure" to submit a paddle labeled as USAP-approved for advance testing. ECF No. 48 at 14. A violation of the agreement does not require the same intentional misrepresentation animating Counts I and II, and so Count III is not duplicative of Counts I and II. *Cf. Burger v. Healthcare Mgmt. Sols., LLC*, Civ. No. RDB-23-1215, 2024 WL 473735, at *9 (D. Md. Feb. 7, 2024) (declaratory judgment count dismissed as serving "no purpose" other than duplicating request for injunctive relief). For these reasons, the Court will not dismiss Count III.

## IV. Conclusion

Based on the foregoing, Joola's Motion to Dismiss the Counterclaim at ECF No. 43 is DENIED.  Joola SHALL ANSWER the counterclaim within fourteen (14) days from the date of this Order.


Date: 2/20/2026                                                                      /s/
                                                                                     PAULA XINIS
                                                                                     United States District Judge